Francis O. Scarpulla (CASB No. 41059)
Patrick B. Clayton (CASB No. 240191)
LAW OFFICES OF FRANCIS O. SCARPULLA
456 Montgomery Street, 17th Floor
San Francisco, CA 94104
Telephone:     (415) 788-7210
Facsimile:      (415) 788-0706
fos@scarpullalaw.com
pbc@scarpullalaw.com

Mark F. Anderson (CASB No. 44787)
ANDERSON, OGILVIE & BREWER
1736 Stockton Street, Ground Floor
San Francisco, CA  94133
Telephone:     (415) 651-1951
Facsimile:      (415) 500-8300
mark@aoblawyers.com

*Counsel for Plaintiffs Christopher Walker,
Betty Lou Rugg, and the Proposed Classes*

[Additional Counsel on Signature Page]

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| Christopher Walker and Betty Lou Rugg, individually, and on behalf of all others similarly situated, ) )<br>) | No. |
| ) | CLASS ACTION COMPLAINT |
| PLAINTIFFS ) ) | Jury Trial Demanded |
| v. ) ) | |
| FCA US LLC, a Delaware limited liability company; FIAT CHRYSLER AUTOMOBILES N.V., a corporation organized under the laws of the Netherlands; ROBERT BOSCH GmbH, a corporation organized under the laws of Germany; and ROBERT BOSCH LLC, a Delaware limited liability company, ) ) ) ) ) ) ) ) | |
| DEFENDANTS. ) ) | |

1

1.    Plaintiffs Christopher Walker and Betty Lou Rugg ("Plaintiffs"), on behalf of themselves, individually, and on behalf of the members of the classes of all similarly-situated persons and entities who purchased or leased Model Year 2014-2016 3.0 liter EcoDiesel engine vehicles ("Class Vehicles") manufactured and sold by Defendants FCA US LLC or Fiat Chrysler Automobiles N.V. (collectively, "Fiat Chrysler"), which had vehicle-emissions software and/or hardware designed and produced by Defendants Robert Bosch GmbH and/or and Robert Bosch LLC (collectively, "Bosch," and together with Fiat Chrysler, "Defendants"), and, demanding trial by jury, complain and allege as follows:

# I.
## JURISDICTION AND VENUE

2.    Plaintiffs bring this action to obtain injunctive relief and to recover damages, including costs of suit, and reasonable attorneys' fees, arising from the Defendants' violations of federal racketeering and vehicle warranty laws, and statutory and common-law violations arising under state law.

3.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d). The matter in controversy exceeds $5,000,000 exclusive of interest and costs, and this matter is a class action in which certain class members are citizens of States other than each Defendant's state of citizenship. The Court also has jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff and the Classes have brought federal claims under the RICO Act, 18 U.S.C. § 1962, and the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301. This Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).

4.    This Court has personal jurisdiction over each Defendant pursuant to 18 U.S.C. § 1965(b) & (d), and/or California Code of Civil Procedure section 410.10. This Court has personal jurisdiction over Defendants because they have minimum contacts with the United States, this judicial district, and this State, and intentionally availed themselves of the laws of the United States and this state by distributing, testing, selling, leasing, and/or providing warranties for Fiat Chrysler vehicles in this State and District. At least in part because of Fiat Chrysler's

CLASS ACTION COMPLAINT

and Bosch's misconduct as alleged in this Complaint, Class Vehicles ended up on this state's roads and in dozens of dealerships across the state.

5.      Venue is proper in this Court under 28 U.S.C. § 1391 because Fiat Chrysler advertises, markets, leases, and sells a substantial number of automobiles in this District and has dealerships in this District. Furthermore, a substantial part of the events alleged in this Complaint giving rise to Plaintiff and the Classes' claims, including the false and misleading advertising alleged herein, occurred in, emanated from and/or were directed into this District. Venue is also proper in this Court because Fiat Chrysler and Bosch caused harm to Class Members residing in this District.

6.      Pursuant to Civil L.R. 3-2(c) and 3-5(b), assignment to the San Francisco Division is proper because a substantial part of the events or omissions which give rise to Plaintiffs' claims arose in the counties served by the San Francisco Division, including Fiat Chrysler's marketing, selling, and leasing of the vehicles at issue, causing harm to Class Members residing in those counties.

## II.
## PARTIES

### A.  Plaintiffs

7.      Plaintiff, Christopher Walker ("Walker"), a resident of Chicago, Illinois, purchased his 2014 Jeep Grand Cherokee EcoDiesel, VIN 1C4RJFBM5EC380840, new on June 14, 2014, from Fields Chrysler Jeep Dodge RAM, a franchised Fiat Chrysler dealer, located in Glenview, Illinois. Plaintiff purchased the Jeep primarily for his personal and family use. Plaintiff still owns the Jeep.

8.      Before purchasing his 2014 Jeep Grand Cherokee EcoDiesel, plaintiff Walker became interested in buying a Jeep EcoDiesel model after watching Fiat Chrysler's television advertisements.  Plaintiff Walker then went to Fiat Chrysler's website and read Fiat Chrysler's representations that its EcoDiesel models feature low emissions and excellent fuel efficiency. Plaintiff Walker relied on these representations in making the decision to buy a Jeep.

CLASS ACTION COMPLAINT

9.      Plaintiff, Betty Lou Rugg ("Rugg"), a resident of Mill Run, PA, leased her 2015 Dodge RAM 1500 EcoDiesel truck, VIN 1C6RR7LM2FS627971, new on April 17, 2015, from Tri Star Uniontown, a franchised Fiat Chrysler dealer located in Uniontown, PA.  Plaintiff leased the Dodge RAM primarily for her personal and family use.  Plaintiff Rugg continues to lease the truck.

10.     Before Plaintiff Rugg leased the 2015 Dodge RAM 1500 EcoDiesel, her son, Steven Russell Rugg, read about the alleged power and performance of the EcoDiesel models on the Fiat Chrysler website and told his mother about what he discovered.  Based on her conversations with her son about Fiat Chrysler's reputations and its website, Plaintiff Rugg, who relied on these representations in making her decision, leased the vehicle.

11.     Both Plaintiffs paid additional money to get the EcoDiesel models as compared to the comparable gasoline powered models. The EcoDiesel engines added about $8,000 to the cost of the vehicles according to the sticker prices.

12.     Plaintiffs' vehicles came with a five-year or 100,000-mile powertrain warranty from Fiat Chrysler and an eight-year/80,000-mile federally mandated warranty on specific emissions components.

13.     Fiat Chrysler failed to disclose that the vehicles came equipped with emissions systems that, during normal driving conditions, emitted many multiples of the allowed level of pollutants such as NOx.

14.     Plaintiffs would not have purchased their EcoDiesel vehicles had they known the vehicles were equipped with defeat software or that the vehicles' emissions exceeded government standards.

**B.  Defendants**

15.     FCA US LLC ("FCA"), an American automotive limited liability company, which is organized and existing under the laws of Delaware with its principal place of business and headquarters in Auburn Hills, Michigan, is hereby named a defendant herein.  FCA is wholly owned by defendant Fiat Chrysler Automobiles N.V., a holding company. Until the end of 2014, FCA went by the name Chrysler Group, LLC.

16.    Fiat Chrysler Automobiles N.V. ("Fiat" and along with FCA, collectively "Fiat Chrysler"), a Dutch corporation headquartered in London, United Kingdom, is hereby named a defendant herein.  FCA and Fiat Chrysler Automobiles N.V. are collectively referred to as "Fiat Chrysler" or "Fiat."

17.    Fiat Chrysler is a motor vehicle manufacturer and a licensed distributor of new Chrysler, Dodge, Jeep, and Ram vehicles. The Chrysler brand is one of the "Big Three" American automobile brands. Fiat Chrysler engages in commerce by distributing and selling new passenger cars and trucks under its Chrysler, Dodge, Jeep, and Ram brands. Other major divisions of Fiat include Mopar, its automotive parts and accessories division, and SRT, its performance automobile division. As of 2015, Fiat Chrysler is the seventh largest automaker in the world by unit production.

18.    Fiat Chrysler, through its various entities, designs, manufactures, markets, distributes, and sells automobiles throughout the U.S., as well as worldwide. Fiat Chrysler and/or its agents designed, manufactured, and installed the EcoDiesel engine systems in the Class Vehicles. Fiat Chrysler also developed and disseminated the owner's manuals and warranty booklets, advertisements, and other promotional materials relating to the Class Vehicles.

19.    Robert Bosch GmbH ("Bosch GmbH"), a German multinational engineering and electronics company headquartered in Gerlingen, Germany, is hereby named a defendant herein. Bosch GmbH is the parent company of Robert Bosch LLC. Bosch GmbH, directly and/or through its North-American subsidiary, Robert Bosch LLC, at all material times, designed, manufactured, and supplied elements of the defeat device to Fiat Chrysler for use in the Class Vehicles. Bosch GmbH is subject to the personal jurisdiction of this Court because it has availed itself of the laws of the United States through its management and control over Robert Bosch, LLC, and over the design, development, manufacture, distribution, testing, and sale of many thousands of the defeat devices installed in the Class Vehicles sold or leased in the U.S.

20.    Robert Bosch LLC ("Bosch LLC" and with Bosch GmbH are collectively referred to as "Bosch"), a Delaware limited liability company with its principal place of business located

at 38000 Hills Tech Drive, Farmington Hills, Michigan 48331, is hereby named a defendant herein.  Bosch LLC is a wholly-owned subsidiary of Bosch GmbH.  Bosch LLC, directly and/or in conjunction with its parent, Bosch GmbH, at all material times, designed, manufactured, and supplied elements of the defeat device to Fiat Chrysler for use in the Class Vehicles.

21.    Both Bosch GmbH and Bosch LLC operate under the under the umbrella of the Bosch Group, which encompasses some 340 subsidiaries and companies. The Bosch Group is divided into four business sectors: Mobility Solutions (formerly Automotive Technology), Industrial Technology, Consumer Goods, and Energy and Building Technology. The Mobility Solutions sector, which supplied parts to the automotive industry, and its Diesel Systems division, which develops, manufactures, and supplies diesel systems, are particularly at issue here and include the relevant individuals from both Bosch defendants. Regardless of whether an individual works for Bosch in Germany or in the U.S., the individual holds himself or herself out as working for Bosch. This collective identity is captured by Bosch's mission statement: "We are Bosch," a unifying principle that links each entity and person within the Bosch Group.

22.    The Bosch defendants were knowing and active participants in the creation, development, marketing, and sale of illegal defeat devices for diesel vehicles specifically designed to evade U.S. emissions requirements in vehicles sold in the United States. These diesel vehicles include the Dodge Ram 1500 EcoDiesel and Jeep Grand Cherokee EcoDiesel, as well as diesel vehicles made by Volkswagen, Mercedes, and other manufacturers. Bosch's involvement in skirting diesel emissions standards encompasses work with multiple companies and predates the identified Class Vehicles in this Complaint.

23.    Bosch participated not only in the development of the defeat device(s), but in the scheme to prevent U.S. regulators from uncovering the device's true functionality. Moreover, Bosch's participation was not limited to engineering the defeat device(s). Bosch was a knowing and active participant with Fiat Chrysler, and other diesel manufacturers, to defraud U.S. consumers, regulators, and the public at large.

24.    During the Class Period, each Defendant acted as an agent, servant, employee, or joint venturer of the other Defendants and in doing the things alleged acted within the course of

1   such agency, employment, or in furtherance of the joint venture to accomplish the scheme. Each

2   Defendant's acts alleged herein was done with the permission and consent of each of the other

3   Defendants. While each of the Defendants are separate legal entities, each of the Defendants

4   work together under a common identity as portrayed to the public and there is sufficient unity of

5   interest and control between each Defendant such that the acts of one are for the benefit and can

6   be imputed to the acts of the other.

7

8   ### III.
    ### CLASS ALLEGATIONS

9       25.    Plaintiffs bring this action as a class action pursuant to Federal Rule of Civil

10  Procedure 23 on behalf of themselves and all others similarly situated.  Plaintiffs seek to

11  represent the following Classes:

12      The Nationwide Class:

13      All persons or entities in the United States who are current or former
14      owners and/or lessees of a Fiat Chrysler Class Vehicle.  Excluded
        from the Class are Defendants, their parent companies, subsidiaries
15      and affiliates, as well as their directors, officers, and employees, any
        co-conspirators, all governmental entities, and any judges or justices
16      assigned to hear any aspect of this action (and members of their
        immediate families), including their courtroom staff and clerks, as
17      well as any juror (or juror's immediate family members).

18      The Illinois Class:

19      All persons or entities residing in Illinois who are current or former
        owners and/or lessees of a Fiat Chrysler Class Vehicle.  Excluded
20      from the Class are Defendants, their parent companies, subsidiaries
        and affiliates, as well as their directors, officers, and employees, any
21      co-conspirators, all governmental entities, and any judges or justices
        assigned to hear any aspect of this action (and members of their
22      immediate families), including their courtroom staff and clerks, as
        well as any juror (or juror's immediate family members).

23      The Pennsylvania Class:

24      All persons or entities residing in Pennsylvania who are current or
        former owners and/or lessees of a Fiat Chrysler Class Vehicle.
25      Excluded from the Class are Defendants, their parent companies,
        subsidiaries and affiliates, as well as their directors, officers, and
26      employees, any co-conspirators, all governmental entities, and any
        judges or justices assigned to hear any aspect of this action (and
27      members of their immediate families), including their courtroom
        staff and clerks, as well as any juror (or juror's immediate family
28      members).

CLASS ACTION COMPLAINT

26.    Certification of Plaintiffs' claims for classwide treatment is appropriate because Plaintiffs can prove the elements of their claims on a classwide basis using the same evidence as would be used to prove those elements on an individual basis. The proposed Classes are appropriate under Rule 23(a), 23(b), 23(b)(2), or 23(b)(3). The proposed Classes are made up of thousands of persons dispersed throughout the country and joinder is impracticable. The precise number and identity of Class Members are unknown to Plaintiffs at this time, but can be obtained from Fiat Chrysler's internal records.

27.    There are questions of law and fact common to the members of the Classes, which predominate over questions affecting only individual Class Members, including:

- Whether Bosch designed and manufactured a defeat device;
- Whether Bosch supplied the defeat device to Fiat Chrysler with the knowledge that Fiat Chrysler would use it in production of Class Vehicles;
- Whether Fiat Chrysler and Bosch engaged in the conduct alleged in this Complaint;
- Whether Fiat Chrysler knew about the defeat device and, if so, how long Fiat Chrysler has known;
- Whether Fiat Chrysler's publicity and advertising regarding the environmental friendliness, fuel emission compliance, fuel efficiency and/or performance of the Class Vehicles was misleading;
- Whether Fiat Chrysler has engaged in unlawful, unfair or fraudulent business practices;
- Whether Fiat Chrysler misrepresented the emission standards compliance and credentials, fuel efficiency and/or performance of the Class Vehicles;
- Whether Fiat Chrysler misrepresented the emissions levels, fuel efficiency and/or performance that the Class Vehicles could achieve under normal driving conditions;

- Whether Fiat Chrysler publicized and advertised the environmental friendliness, fuel emission compliance, fuel efficiency and/or performance of the Class Vehicles;

- Whether Fiat Chrysler's misrepresentations and omissions regarding the compliance with emissions levels, environmental friendliness, fuel efficiency and/or performance of the Class Vehicles has deceived or is likely to have deceived Plaintiffs and the Classes;

- Whether Bosch acted in concert with Fiat Chrysler and aided and abetted Fiat Chrysler's fraud;

- Whether Fiat Chrysler's and Bosch's conduct violates RICO and other laws;

- Whether Fiat Chrysler's conduct violated the Magnuson-Moss Warranty Act;

- Whether Fiat Chrysler's conduct violated the California Consumer Legal Remedies Act;

- Whether Fiat Chrysler's conduct violated California Business and Professions Code § 17200, *et seq.*;

- Whether Fiat Chrysler's conduct violated California False Advertising Law (Business and Professions Code § 17500, *et seq.*);

- Whether Fiat Chrysler breached express and/or implied warranties;

- Whether Fiat Chrysler's unlawful, unfair or deceptive practices have harmed Plaintiffs and the Class Members;

- Whether Plaintiffs and the members of the Classes are entitled to equitable or injunctive relief and,

- Whether Plaintiffs and the members of the Classes are entitled to damages, including punitive damages.

28.     Plaintiffs are members of the Classes and Plaintiffs' claims are typical of the claims of the Class.

29.     Plaintiffs are willing and prepared to serve the Court and the proposed Classes in a representative capacity. Plaintiffs will fairly and adequately protect the interests of the Classes

9

and have no interests adverse to or which conflict with the interests of the other members of the Classes.

30.     Plaintiffs have engaged the services of counsel who are experienced in complex class litigation, will adequately prosecute this action, and will assert and protect the rights of and otherwise represent the Plaintiffs and absent Class Members.

31.     The prosecution of separate actions by individual members of the Classes would create a risk of inconsistency and varying adjudications, establishing incompatible standards of conduct for Fiat Chrysler and Bosch.

32.     Fiat Chrysler and Bosch have acted on grounds generally applicable to the Classes, thereby making relief with respect to the members of the Classes as a whole appropriate.

33.     A class action is superior to other available means for the fair and efficient adjudication of this controversy. Prosecution of the complaint as a class action will provide redress for individual claims too small to support the expense of complex litigation and reduce the possibility of repetitious litigation.

**IV.**
**FACTUAL ALLEGATIONS**

A.     **Emissions Regulation in the United States**

34.     1970 was a turning point for air pollution control in the United States. First, Congress enacted the Clean Air Act. That Act required a 90% reduction in emissions from new automobiles by 1975. The EPA, also established by Congress, is responsible for regulating motor vehicle pollution as one of its mandates.

35.     The Clean Air Act was enacted "to protect and enhance the quality of the Nation's air resources so as to promote the public health and welfare and the productive capacity of its population," and "to initiate and accelerate a national research and development program to achieve the prevention and control of air pollution." 42 U.S.C. § 7401(b)(1)-(2).

36.     One of the requirements of the Clean Air Act is that vehicle manufacturers certify to the EPA that their products meet the requisite federal emission standards to control air

10

pollution. To ensure that every vehicle introduced into United States commerce satisfies applicable emission standards the EPA administers a certification program. The EPA issues certificates of conformity ("COC"), under this standard and approves the introduction of vehicles satisfying the standards into United States commerce. Certificates of conformity must be issued by the EPA for every vehicle sold in the United States. Class Vehicles (light-duty motor vehicles) at issue in this Complaint, must also obtain the COC. Additionally, emission standards for certain air pollutants, which include nitrogen oxides (NOx), must be satisfied by the Class Vehicles. 40 C.F.R. § 86.1811-04; 42 U.S.C. § 7401(b)(1)-(2).

37.     Diesel vehicles face a particular challenge in meeting emission standards. Diesel engines work by compressing a charge of air until it reaches high enough pressure and temperature to spontaneously combust diesel fuel, which is injected into the hot charge, rather than relying on a spark plug to initiate combustion as in a typical gasoline engine. Diesel engines operate with higher compression and expansion ratios than gasoline engines, and without a throttle, and therefore are more fuel efficient. However, because of the inhomogeneous nature of diesel combustion, and higher flame temperatures, a diesel engine typically produces more pollutants, which are more difficult to treat. The World Health Organization deemed them carcinogenic and approximately as dangerous as asbestos in 2012.

38.     California Air Resources Board (CARB), a state regulatory body, sets emission standards for vehicles operating in the state. Emission reduction standards for automobiles are set by California's Low Emission Vehicle Regulations.

**B.     Fiat Chrysler Aggressively Courts Environmentally-Conscious Diesel Customers**

39.     In 2014, Fiat Chrysler introduced its 3.0 liter "EcoDiesel" engine, aiming to capitalize on the green vehicle wave. The EcoDiesel engine found its home in the 2014 Dodge Ram 1500 EcoDiesel and the 2014 Jeep Grand Cherokee EcoDiesel.

40.     Fiat Chrysler aggressively markets its EcoDiesel vehicles as having "advanced clean diesel technology," "unbelievable fuel economy," "ultra clean," and "emissions compliant." YouTube videos are part of Fiat Chrysler's advertising campaign for the Jeep

11

EcoDiesel vehicles, including a nearly five-minute commercial featuring photographers popular on social media that has been viewed well over a quarter of a million times on YouTube alone. Another video touted the 2014 Jeep Grand Cherokee EcoDiesel as "the greenest Jeep we've ever done."

41.    Fiat Chrysler continued its barrage of advertisements promoting its vehicles as fuel-efficient, green and safe vehicles at an attractive price. Fiat Chrysler also represented that the EcoDiesel vehicles have "amazing capability," "amazing fuel economy," an "amazing powertrain" and an "amazing range." Yet Fiat Chrysler also emphasized the environmentally friendly nature of the EcoDiesel vehicles and held itself out as a champion of the environment. These representations were false.

42.    Fiat Chrysler's widespread television, internet, and social media marketing paid off. Fiat's EcoDiesel vehicles were being promoted and sales increased. Fiat Chrysler was awarded as one of the 2014 Ward's 10 Best Engines for its EcoDiesel engine at an event sponsored in part by Bosch.

43.    In contradiction to its advertisements, the Class Vehicles were not environmentally friendly. Instead, Fiat Chrysler and Bosch had knowingly and intentionally manipulated the Class Vehicle's emission system, and the Class Vehicles were actually emitting well above the legal limit.

**C.    International Diesel-Emissions Cheating Scandal**

44.    After news of the now globally-known emissions cheating by Volkswagen broke, CARB and EPA looked at other diesel manufacturers with new vigor. On September 25, 2015, a week after issuing its notice of violation to Volkswagen, CARB sent a letter to multiple automobile manufacturers, including Fiat Chrysler, informing them that new testing methods would be used to screen a host of potentially affected models across a range of years for non-approved (undisclosed) Auxiliary Emission Control Devices (AECDs).

45.    All modern engines are integrated with sophisticated computer components to manage the vehicle's operation, which includes engine control units (ECUs). Bosch tested, manufactured and sold the ECU and associated software (together, the "Bosch ECU") used by

CLASS ACTION COMPLAINT

1    Volkswagen, Mercedes, and other manufacturers, as well as by Fiat Chrysler in the Class

2    Vehicles. Bosch has publicly touted the effectiveness of its products for low-emission diesel

3    vehicles.

4           46.    Bosch worked with Fiat Chrysler to create a unique set of specifications and

5    software code to manage the vehicles' engine operation.

6           47.    With respect to the Class Vehicles, the Bosch ECU was also enabled by Bosch and

7    Fiat Chrysler to surreptitiously evade emissions regulations. Both the Dodge Ram 1500 and the

8    Jeep Grand Cherokee (the Class Vehicles) run Bosch software. Bosch and Fiat Chrysler worked

9    together to develop and implement a specific set of software algorithms for implementation in

10   the Class Vehicles, which permitted Fiat Chrysler to adjust fuel levels, exhaust gas recirculation,

11   air pressure levels, and even urea injection rates (where applicable). When carmakers test their

12   vehicles against EPA emission standards, they place their cars on dynamometers (large rollers)

13   and then perform a series of specific maneuvers prescribed by federal regulations.

14          48.    Bosch's ECUs and software gave Volkswagen the ability to detect test conditions

15   by monitoring vehicle speed, acceleration, engine operation, ambient air pressure, and even the

16   position of the steering wheel. Fiat Chrysler used the Bosch ECU, which contained 8

17   undisclosed AECDs (defeat devices) to reduce the effectiveness of the emission control system

18   when conditions were detected which were not the test cycle. Such non-test-cycle conditions

19   occur frequently in everyday driving, and lead to the production of excess amounts of NOx.

20          49.    This workaround is illegal. The Clean Air Act expressly prohibits defeat devices,

21   defined as any auxiliary emission control device "that reduces the effectiveness of the emission

22   control system under conditions which may reasonably be expected to be encountered in normal

23   vehicle operation and use." 40 C.F.R. § 86.1803-01; see also id. § 86.1809-10 ("No new light-

24   duty vehicle, light-duty truck, medium-duty passenger vehicle, or complete heavy- duty vehicle

25   shall be equipped with a defeat device."). Moreover, the Clean Air Act prohibits the sale of

26   components used as defeat devices, "where the person knows or should know that such part or

27   component is being offered for sale or installed for such use or put to such use." 42 U.S.C. §

28   7522(a)(3). Finally, in order to obtain a COC, automakers must submit an application, which

lists all AECDs installed in the vehicle, a justification for each, and an explanation of why the control device is not a defeat device.

50.     To obtain the COCs necessary to sell its vehicles, Fiat Chrysler did not disclose, and affirmatively concealed, the presence of the test-detecting and performance altering software code that it developed with Bosch from government regulators, making the software an illegal defeat device.

51.     Because the COCs were fraudulently obtained, and because the Class Vehicles did not conform "in all material respects" to the specifications provided in the COC applications, the Class Vehicles were never covered by a valid COC and therefore were never legal for sale, or EPA and/or CARB compliant, as represented. Fiat and Bosch hid these facts from EPA, other regulators, and its dealers and consumers. Fiat Chrysler continued to sell and lease the Class Vehicles to the driving public, despite their illegality, and with the complicity of Bosch.

52.     Fiat Chrysler's illegal workaround was enabled by its close relationship with Bosch, which derives a sizeable portion of its annual revenue from developing and manufacturing parts for use in diesel vehicles, including those made by Fiat Chrysler. Bosch was well aware that Fiat was using its emissions control components as a defeat device and, in fact, worked with Fiat Chrysler to develop the software algorithms specifically tailored for the Class Vehicles.

### D.     Fiat Chrysler Gets Caught Cheating by EPA and CARB

53.     The EPA issued a notice of violation of the Clean Air Act, 42 U.S.C. §§ 7401 – 7671q, and its implementing regulations to Fiat Chrysler on January 12, 2017. According to the notice, Fiat Chrysler's light-duty diesel vehicles from 2014-2016 contained at least eight undisclosed AECDs that "appear to cause the vehicle to perform differently when the vehicle is being tested for compliance with the EPA emission standards using the Federal emission test procedure (e.g. FTP, US06), than in normal operation and use."  Among other violations, EPA asserts "FCA violated section 203(a)(1) of the CAA [Clean Air Act], 42 U.S.C. S 7522(a)(1), each time it sold, offered for sale, introduced into commerce, delivered for introduction into commerce, or imported (or caused any of the foregoing with respect to) approximately 103,828

new motor vehicles within these test groups." CARB also issued a notice of violation to Fiat

Chrysler on January 12, 2017.

54.     The chart below indicates which vehicles (the "Class Vehicles") have been

impacted by Fiat Chrysler's deliberate deception. Additional investigation may lead to the

discovery of other models and years impacted by the deceptive scheme.

| Model Year | EPA Test Group | Make and Model |
|------------|----------------|----------------|
| 2014 | ECRXT03.05PV | Dodge Ram 1500 |
| 2014 | ECRXT03.05PV | Jeep Grand Cherokee |
| 2015 | ECRXT03.05PV | Dodge Ram 1500 |
| 2015 | ECRXT03.05PV | Jeep Grand Cherokee |
| 2016 | ECRXT03.05PV | Dodge Ram 1500 |
| 2016 | ECRXT03.05PV | Jeep Grand Cherokee |

55.     Fiat Chrysler did not act alone. At the heart of the diesel scandal are the Bosch

defendants. Bosch was an active and knowing participant in the scheme to evade U.S. emissions

requirements. Bosch manufactured and tested the engine control unit and software that allowed

Fiat Chrysler to implement the defeat device(s).

56.     Defeat devices, like the one(s) used by Fiat Chrysler, cheat the emission control

systems in a vehicle that are used to comply with the Clean Air Act emission standards. The

defeat devices use multiple factors in sensing whether the vehicle is being tested for compliance

with EPA emission standards. The parameters of the federal test procedure used for emission

testing for EPA certification purposes are tracked by these inputs.

57.     The Class Vehicles contain at least eight undisclosed AECDs, which work to alter

the performance of the vehicles when testing conditions are present. When the Class Vehicles

were not being tested, the EcoDiesel vehicles polluted at levels far above the legal limits set by

EPA and CARB.

58.     Fiat Chrysler's use of the defeat device caused the Class Vehicles to not conform

in all material respects to the vehicle specifications described in the applications for the COCs.

As a result, Fiat Chrysler violated section 203(a)(1) of the Clean Air Act, 42 U.S.C. §

7522(a)(1), by selling, offering for sale, introducing into commerce, delivering for introduction

into commerce, or importing these vehicles, or for causing any of the foregoing acts.

59.    Fiat Chrysler violated the Clean Air Act by making and selling vehicles with defeat devices that cheated emissions testing and also allowed for higher levels of air emissions than they certified to EPA when not being tested.

60.    Fiat Chrysler knew that the defeat devices it designed and installed would cheat the Clean Air Act emission standards because the software was designed to track the parameters of the federal test procedure and alter the emission control system so that it underperformed whenever the software determined the vehicle was not undergoing emissions testing.

61.    The purpose of the Clean Air Act and associated regulations is to reduce emissions of NOx and other pollutants from mobile sources of air pollution in an effort to protect human health and the environment. NOx pollution damages the environment and is a risk to human health.

62.    It is well documented that these pollutants are associated with serious health effects, including increased asthma attacks and other respiratory illnesses.  Exposure to ozone and particulate matter which result from nitrogen dioxide, a by-product of NOx emissions, have been linked to an increased risk of heart attacks, strokes, and premature death due to respiratory-related or cardiovascular-related effects. Recent studies have shown that not only can NOx cause or exacerbate a number of health conditions, but exposure to these toxins are correlated with lower birth weight and smaller head circumference in babies.

63.    Eco-friendly vehicles are central to our environment and health. The largest selling factor for diesel cars is their fuel economy and low carbon emissions as compared to standard gasoline engines. Diesel fuel also contains more energy density than gasoline. These characteristics result in anywhere from 20% to 40% better fuel economy. As a result, the United States and California governments have encouraged the use of diesel engines to meet fuel efficiency and greenhouse gas targets.

64.    The down side of diesel cars is that they emit far more nitrogen dioxide than standard gasoline engines. Consumers are charged substantially more upfront when purchasing the vehicles.  Class Members, under the impression they were buying an eco-friendly car among other characteristics, paid a significant premium for their Class Vehicles.

65.    According to automotive technology experts, disengaging the pollution controls on a diesel-fueled car can yield better fuel economy, urea consumption and performance, including increased torque and acceleration. Fiat Chrysler benefitted from these features because they increased the Class Vehicles' selling appeal.

66.    Fiat Chrysler cheated Class Members by covertly and intentionally disregarding United States regulations put in place to protect consumers and the environment.

67.    Fiat Chrysler charged a substantial premium on their "clean" diesel vehicles – which Fiat ironically marketed under the term "EcoDiesel."

68.    Plaintiff and the Classes have been harmed as a result of Fiat Chrysler's actions. Members of the Classes would not have purchased the Class Vehicles, and/or would have paid substantially less for their vehicle. The loss of value to the Class Vehicles is directly attributable to Defendants' fraudulent and deceptive actions. The Class Vehicles are not worth as much in a trade or sale as if the vehicle had been as warranted. The value of the Class Vehicles is furthered decreased by this actual harm and also the harm to the brand.

69.    Plaintiff and the Classes will more than likely lose the use of their vehicles as a result of a recall. Moreover, in order for the vehicles to comply with federal emission standards the vehicles will have reduced fuel economy and reduced acceleration during real world use after the Class Vehicles are remediated. As a result, the Plaintiff Classes have sustained incidental and consequential damages as herein alleged.

**V.**
**CLAIMS**

**FIRST CAUSE OF ACTION**
**Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1962(c)-(d)**
**(By Nationwide Class Against All Defendants)**

70.    Plaintiffs re-allege and incorporate by reference the allegations set forth above.

71.    Plaintiffs bring this claim individually and on behalf of the Nationwide Class against all Defendants.

72.    Defendants are all "persons" under 18 U.S.C. § 1961(3) because they are capable of holding, and do hold, "a legal or beneficial interest in property."

17

73.     Section 1962(c) makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." Section 1962(d), in turn, makes it unlawful for "any person to conspire to violate."

74.     For many years now, Defendants have aggressively sought to increase the sales of Class Vehicles in an effort to bolster revenue, augment profits and increase Fiat Chrysler's share of the diesel vehicle market. Finding it impossible to achieve their goals lawfully, however, Bosch and Fiat resorted instead to orchestrating a fraudulent scheme and conspiracy. In particular, Bosch and Fiat, along with other entities and individuals, created and/or participated in the affairs of an illegal enterprise (the "Enterprise") that's primary purpose was to deceive the regulators and the public into believing the Class Vehicles were "clean" and "environmentally friendly." As explained in greater detail below, Bosch's and Fiat's acts in furtherance of the Enterprise violate section 1962(c) and (d).

75.     Upon information and belief, the Enterprise consisted of FCA US LLC, Fiat Chrysler Automobiles N.V., Robert Bosch GmbH, and Robert Bosch LLC.

76.     Bosch tested, manufactured, advertised and sold the electronic control unit and associated software that managed the emissions control system used by Fiat Chrysler in the Class Vehicles (referred to collectively as the "Bosch ECU").

77.     Bosch's bad acts are not limited to the conspiracy with Fiat Chrysler that is the subject of this Complaint. Bosch also worked with Volkswagen, Mercedes, and other manufacturers to develop and implement a specific and unique sets of software algorithms for those manufacturers to surreptitiously evade emissions regulations.

78.     In this case, Bosch customized the ECU for installation in the Class Vehicles with unique software code to detect when the vehicle was undergoing emissions testing, as described above.

79.     Bosch's involvement in emissions cheating came to light during the litigation concerning Volkswagen's defeat device. As was publicly reported, the Bosch defendants,

CLASS ACTION COMPLAINT

seeking to conceal their involvement in the unlawful Enterprise, sent a letter to Volkswagen AG in 2007 stating that Volkswagen diesels could not be lawfully operated if the LNT or SCR aftertreatment was disabled.  The exact same logic applies to the Fiat Chrysler Class Vehicles., as several of the AECDs identified by EPA alter SCR (selective catalytic reduction). For example: "The operation of AECD #4 [DEF Dosing Disablement during SCR Adaptation], particularly when combined with AECD #8 [Use of Load Governor to Delay Ammonia Refill of SCR Catalyst], increases emissions of tailpipe NOx under conditions reasonably expected to be encountered in normal vehicle operation and use."  (EPA NOV letter dated January 12, 2017, pp. 5-6.)

80.    The persons and entities described in paragraph 81 are members of and constitute an "association-in-fact" enterprise.

81.    At all relevant times, the Enterprise: (a) had an existence separate and distinct from each defendant; (b) was separate and distinct from the pattern of racketeering in which defendants engaged; and (c) was an ongoing organization consisting of legal entities, including Fiat Chrysler and Bosch, and other entities and individuals associated for the common purpose of designing, manufacturing, distributing, testing, and selling the Class Vehicles through fraudulent COCs and EOs, false emissions tests, deceptive and misleading marketing and materials, and deriving profits and revenues from those activities. Each member of the Enterprise shared in the bounty generated by the enterprise, i.e., by sharing the benefit derived from increased sales revenue generated by the scheme to defraud consumers and franchise dealers alike nationwide.

82.    The Enterprise functioned by selling vehicles and component parts to the consuming public. Many of these products are legitimate, including vehicles that do not contain defeat devices. However, Bosch, Fiat Chrysler, and their co-conspirators, through their illegal Enterprise, engaged in a pattern of racketeering activity, which involves a fraudulent scheme to increase revenue for defendants and the other entities and individuals associated-in-fact with the Enterprise's activities through the illegal scheme to sell the Class Vehicles.

CLASS ACTION COMPLAINT

83.     The Enterprise engaged in, and its activities affected interstate and foreign commerce, because it involved commercial activities across state boundaries, such as the marketing, promotion, advertisement and sale or lease of the Class Vehicles throughout the country, and the receipt of monies from the same.

84.     Within the Enterprise, there was a common communication network by which co-conspirators shared information on a regular basis. The Enterprise used this common communication network for the purpose of manufacturing, marketing, testing, and selling the Class Vehicles to the general public nationwide.

85.     Each participant in the Enterprise had a systematic linkage to each other through corporate ties, contractual relationships, financial ties, and continuing coordination of activities. Through the Enterprise, Bosch and Fiat functioned as a continuing unit with the purpose of furthering the illegal scheme and their common purposes of increasing their revenues and market share, and minimizing losses.

86.     Defendants participated in the operation and management of the Enterprise by directing its affairs, as described herein. While Bosch and Fiat Chrysler participated in, and are members of, the enterprise, they have a separate existence from the enterprise, including distinct legal statuses, different offices and roles, bank accounts, officers, directors, employees, individual personhood, reporting requirements, and financial statements.

87.     Fiat Chrysler exerted substantial control and participated in the affairs of the Enterprise by:

(a)     Designing the Class Vehicles with defeat devices;

(b)     Failing to correct or disable the defeat devices when warned;

(c)     Manufacturing, distributing, and selling the Class Vehicles that emitted greater pollution than allowable under the applicable regulations;

(d)     Misrepresenting and omitting, or causing such misrepresentations and omissions to be made, vehicle specifications on COC and EO applications;

(e)     Introducing the Class vehicles into the stream of U.S. commerce without a valid EPA COC and/or CARB EO;

20

(f)     Concealing the existence of the defeat devices and the unlawfully high emissions from regulators and the public;

(g)     Persisting in the manufacture, distribution, and sale of the Class Vehicles even after questions were raised about the emissions testing and discrepancies concerning the same;

(h)     Misleading government regulators as to the nature of the defeat devices and the defects in the Class Vehicles;

(i)     Designing and distributing marketing materials that misrepresented and concealed the defect in the Class Vehicles;

(j)     Otherwise misrepresenting or concealing the defective nature of the Class Vehicles from the public and regulators; and

(k)     Illegally selling and/or distributing the Class Vehicles; collecting revenues and profits from the sale of such products, and ensuring that the other defendants and unnamed coconspirators complied with the fraudulent scheme.

88.     Bosch also participated in, operated, and/or directed the Enterprise. Bosch participated in the fraudulent scheme by manufacturing, installing, testing, modifying, and supplying the Bosch ECU, which effectively evaded emissions requirements and regulations. Bosch exercised tight control over the coding and other aspects of the software and closely collaborated with Fiat Chrysler to develop, customize, and calibrate the Bosch ECU and/or undisclosed AECDs. Additionally, Bosch continuously cooperated with Fiat Chrysler to ensure that the Bosch ECU was fully integrated into the Class Vehicles. Bosch also participated in the affairs of the Enterprise by concealing the defeat devices on U.S. documentation and in communications with U.S. regulators. Bosch collected millions of dollars in revenues and profits from the Bosch ECUs installed in the Class Vehicles.

89.     Without defendants' willing participation, including Bosch's active involvement in developing and supplying the critical defeat devices for the Class Vehicles, the Enterprise's scheme and common course of conduct would not have been successful.

90.    Bosch and Fiat Chrysler directed and controlled the ongoing organization necessary to implement the scheme at meetings and through communications of which Plaintiffs cannot fully know at present, because Bosch, Fiat, and other unidentified co-conspirators control such information.

91.    The members of the Enterprise all served a common purpose; namely, to outsell their law-abiding competitors and increase their revenues through the sale of as many Class Vehicles (including the emissions components made and sold by Bosch) as possible. Each member of the Enterprise shared the bounty generated by the enterprise, i.e., by sharing the benefit derived from increased sales revenue generated by the scheme to defraud. Fiat Chrysler sold more Class Vehicles by using an emissions control system that was cheaper to install and allowed for generous performance and efficiency tuning, all the while charging consumers a premium for purportedly "clean," "environmentally friendly" and "fuel efficient" Class Vehicles. The Bosch defendants, in turn, sold more ECUs because Fiat Chrysler manufactured and sold more Class Vehicles. Bosch and Fiat achieved their common purpose by repeatedly misrepresenting and concealing the nature of the Class Vehicles and the ability of the emissions control systems (including the Bosch-supplied parts) to effectively reduce toxic emissions during normal operating conditions.

92.    To carry out, or attempt to carry out the scheme to defraud, Bosch and Fiat conducted or participated in the conduct of the affairs of the Enterprise through a pattern of racketeering activity that employed the use of the mail and wire facilities, in violation of 18 U.S.C. §§ 1341 (mail fraud) and 1343 (wire fraud).Specifically, Bosch and Fiat Chrysler participated in the scheme to defraud by using mail, telephone, and the Internet to transmit writings travelling in interstate or foreign commerce.

93.    Defendants' use of the mails and wires include, but are not limited to, the transmission, delivery, or shipment of the following by Bosch, Fiat Chrysler, or third parties that were foreseeably caused to be sent as a result of Bosch's and Fiat's illegal scheme:

    (a)    orders of and invoices for Class Vehicles;

    (b)    communications within the Enterprise;

CLASS ACTION COMPLAINT

(c)    shipments of Class Vehicles;

(d)    invoices for component parts;

(e)    false or misleading communications, including advertisements, representing the Class Vehicles as emissions compliant or environmentally friendly;

(f)    documents intended to facilitate the sale of Class Vehicles;

(g)    revenues and profits to members of the Enterprise;

(h)    meeting invitations, agendas, and minutes;

(i)    other paperwork and communications concerning the Class Vehicles and/or Bosch ECU;

(j)    bills of lading, invoices, shipping records, reports, and correspondence;

(k)    deposits of proceeds; and

(l)    other documents and things, including electronic communications.

94.    The mail and wire transmissions described herein were made in furtherance of Bosch's and Fiat's scheme and common course of conduct to deceive regulators and consumers and lure consumers into purchasing the Class Vehicles, which Bosch and Fiat knew or recklessly disregarded as emitting illegal amounts of pollution, despite their advertising campaign that the Class Vehicles were "clean" diesel cars.

95.    Many of the precise dates of the fraudulent uses of the U.S. Mail and interstate wire facilities have been deliberately hidden, and cannot be alleged without access to Bosch's and Fiat's books and records. However, Plaintiffs have described the types of, and in some instances, occasions on which the predicate acts of mail and/or wire fraud occurred. They include thousands of communications to perpetuate and maintain the scheme, including the things and documents described in the preceding paragraphs.

96.    Defendants have not undertaken the practices described herein in isolation, but as part of a common scheme and conspiracy. In violation of 18 U.S.C. § 1962(d), Bosch and Fiat Chrysler conspired to violate 18 U.S.C. § 1962(c), as described herein. Various other persons, firms and corporations, including third-party entities and individuals not named as defendants in

23

1    this Complaint, have participated as co-conspirators with Bosch and Fiat in these offenses and

2    have performed acts in furtherance of the conspiracy to increase or maintain revenues, increase

3    market share, and/or minimize losses for Bosch, Fiat Chrysler, and their unnamed co-

4    conspirators throughout the illegal scheme and common course of conduct.

5        97.    Bosch and Fiat Chrysler aided and abetted others in the violations of the above

6    laws, thereby rendering them indictable as principals in the 18 U.S.C. §§ 1341 and 1343

7    offenses.

8        98.    To achieve their common goals, Bosch and Fiat hid from the general public the

9    unlawfulness and emission dangers of the Class Vehicles and obfuscated the true nature of the

10    defect even after regulators raised concerns. Bosch and Fiat suppressed and/or ignored warnings

11    from third parties, whistleblowers, and governmental entities about the discrepancies in

12    emissions testing and the defeat devices present in the Class Vehicles.

13        99.    Bosch, Fiat Chrysler, and each member of the conspiracy, with knowledge and

14    intent, have agreed to the overall objectives of the conspiracy and participated in the common

15    course of conduct to commit acts of fraud and indecency in designing, manufacturing,

16    distributing, marketing, testing, and/or selling the Class Vehicles (and the defeat devices

17    contained therein).

18        100.    Indeed, for the conspiracy to succeed, Bosch, Fiat Chrysler, and their

19    coconspirators had to agree to implement and use the similar devices and fraudulent tactics—

20    specifically complete secrecy about the defeat devices in the Class Vehicles.

21        101.    Bosch and Fiat Chrysler knew and intended that government regulators, as well as

22    Plaintiffs and Class members, would rely on the material misrepresentations and omissions

23    made by them about the Class Vehicles. Bosch and Fiat knew and intended Plaintiffs and the

24    Class would incur costs and damages as a result. As fully alleged herein, Plaintiffs and the Class

25    relied upon Bosch's and Fiat's representations and omissions that were made or caused by them.

26    Plaintiffs' reliance is made obvious by the fact that: (1) they purchased hundreds of thousands of

27    vehicles that never should have been introduced into the U.S. stream of commerce and (2)

28    whose worth is far less. In addition, the EPA, CARB, and other regulators relied on the

misrepresentations and material omissions made or caused to be made by defendants; otherwise Fiat Chrysler could not have obtained valid COCs and EOs to sell the Class Vehicles.

102.   Bosch's and Fiat's conduct in furtherance of this scheme was intentional. Plaintiffs and the Class were harmed as a result of defendants' intentional conduct. Plaintiffs, the Class, regulators and consumers, among others, relied on Bosch's and Fiat's material misrepresentations and omissions.

103.   During the design, manufacture, testing, marketing and sale of the Class Vehicles, Bosch and Fiat Chrysler shared technical, marketing and financial information that plainly revealed the emissions control systems in the Class Vehicles as the ineffective, illegal and fraudulent piece of technology they were and are. Nevertheless, Bosch and Fiat Chrysler shared and disseminated information that deliberately represented Class Vehicles as "clean," "environmentally friendly," and "fuel efficient."

104.   By reason of and as a result of the conduct of Bosch and Fiat Chrysler, and, in particular, their pattern of racketeering activity, Plaintiffs and the Class have been injured in multiple ways, including, but not limited to:

(a)   Overpayment for Class Vehicles, as Plaintiffs and Class believed that they were paying for vehicles that met certain emission and fuel efficiency standards and obtained vehicles that were not legal to sell in the United States; and

(b)   The value of the Class Vehicles has diminished, thus reducing their sale and resale value.

105.   Bosch's and Fiat's violations of 18 U.S.C. § 1962(c) and (d) have directly and proximately caused injuries and damages to Plaintiff and the Class, and Plaintiffs and the Class are entitled to bring this action for three times their actual damages, as well as injunctive/equitable relief, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c). Bosch and Fiat knew, understood, and intended for members of the Class to purchase the Class Vehicles, and knew, understood, and foresaw that revelation of the truth would injure members of the Class.

///

**SECOND CAUSE OF ACTION**
**Magnuson-Moss Warranty Act, 15 U.S.C. § 2301**
**(By Nationwide Class Against Fiat Chrysler Defendants)**

106.    Plaintiffs re-allege and incorporate by reference the allegations set forth above.

107.    Plaintiffs bring this claim individually and on behalf of the Nationwide Class under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*

108.    The Class Vehicles are consumer products as defined in 15 U.S.C. § 2301(1).

109.    Fiat Chrysler is a supplier and warrantor as defined in 15 U.S.C. § 2301(4)-(5).

110.    Written warranties as defined in 15 U.S.C. §2301(6)(A) and/or (B), which Fiat Chrysler has breached were received by Plaintiffs and the Class.

111.    Plaintiffs and the Class are "consumers" as defined in 15 U.S.C. § 2301(3). Because they bought a Class Vehicle, they are consumers, and they are entitled to enforce both written and implied warranties under California law.

112.    Under 15 U.S.C. § 2310(e), Plaintiffs and the Class are not required to provide Fiat Chrysler notice of this class action and an opportunity to cure until the time the Court determines the representative capacity of Plaintiffs pursuant to F.R.Civ.P. 23.

113.    Fiat Chrysler breached their written warranties, and are therefore liable to Plaintiffs and the Class under 15 U.S.C. § 2310(d)(1).

114.    As part of the sale transactions relating to the Class Vehicles, Fiat Chrysler gave an implied warranty under the Act. As part of that implied warranty, Fiat warranted that the Class Vehicle complied with all applicable federal and state regulations, including emission regulations. The implied warranty of merchantability was breached by Fiat.

115.    As a result of Fiat Chrysler's breaches of the warranties to Plaintiffs, Plaintiffs and the Class are entitled to damages. These damages include economic damages including either a return of Plaintiffs' and Class Members' purchase price; and/or the difference between the price paid for the Class Vehicle as warranted and the actual value of the Class Vehicle as delivered, and consequential damages.

116.    Further, Plaintiffs and the Class are entitled to reasonable attorneys' fees and costs as determined by the Court.

## THIRD CAUSE OF ACTION
### Illinois Consumer Fraud and Deceptive Practices Act, 815 Ill. Comp. Stat. 505/1 and 720 Ill. Comp. Stat. 295/1A
### (By Plaintiff Walker and Illinois Class Against Fiat Chrysler Defendants)

117. Plaintiff Walker re-alleges and incorporates by reference each of the paragraphs set forth above as though fully set forth herein.

118. Plaintiff Walker brings this claim individually and on behalf of the Illinois Class against Fiat Chrysler.

119. Defendant is a "person" as that term is defined in 815 Ill. Comp. Stat. 505/1(c).

120. Plaintiff and the Class Members are "consumers' as that term is defined in 815 Ill. Comp. Stat. 505/1(e).

121. The Illinois Consumer Fraud and Deceptive Business Practices Act ("Illinois CFA") prohibits "unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression, or omission of any material fact, with intent that others rely upon the concealment, suppression, or omission of such material fact … in the conduct of trade or commerce … whether any person has in fact been misled, deceived or damaged thereby." 815 Ill. Comp. Stat. 505/2.

122. Pursuant to 815 Ill. Comp. Stat. 505/10a(a), Plaintiff Walker and the Illinois members seek monetary relief against Defendant in the amount of actual damages, as well as punitive damages because Defendant acted with fraud and/or malice and/or was grossly negligent.

123. Plaintiff Walker also seeks punitive damages, attorneys' fees, and any other just and proper relief under 815 Ill. Comp. Stat § 505/1, *et seq.*

## FOURTH CAUSE OF ACTION
### Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1)
### (Plaintiffs Rugg and Pennsylvania Class Against Fiat Chrysler Defendants)

124. Plaintiff Betty Lou Rugg re-alleges and incorporates by reference each of the paragraphs set forth above as though fully set forth herein.

125. Plaintiff Rugg brings this claim individually and on behalf of the Pennsylvania Class against Fiat Chrysler.

27

126.    Defendant is a "person" as that term is defined in 73 P.S. §201-1, *et seq.*

127.    Plaintiff leased her Class Vehicles primarily for personal, family or household purposes within the meaning of 73 P.S. § 201-9.2.

128.    All of the acts complained of herein were perpetrated by Defendant in the course of trade or commerce within the meaning of 73 P.S. § 201-2(3).

129.    The Pennsylvania Unfair Trade Practices and Consumer Protection Law ("Pennsylvania CPL") prohibits unfair or deceptive acts or practices, including: (i) "Representing that goods or services have … characteristics, … [b]enefits or qualities that they do not have;" (ii) "Representing that goods or services are of a particular standard, quality or grade … if they are of another;" (iii) "Advertising goods or services with intent not to sell them as advertised;" and (iv) "Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or misunderstanding." 73 P.S. § 201-2(4).

130.    Defendant is liable to Plaintiff and the Pennsylvania Class for treble their actual damages or $100, whichever is greater, and attorneys' fees and costs. 73 P.S. § 201-9.2(a).

**FIFTH CAUSE OF ACTION**
**Fraud**
**(By Illinois and Pennyslvania Classes Against Fiat Chrysler Defendants)**

131.    Plaintiffs re-allege and incorporate by reference each of the paragraphs set forth above as though fully set forth hereinafter. Plaintiffs bring this claim individually and on behalf of the Illinois and Pennsylvania Classes against Fiat Chrysler.

132.    The material facts Fiat Chrysler misrepresented, omitted and/or concealed from Plaintiffs include:

- Representing to consumers purchasing the Class Vehicles that these vehicles' emissions, fuel efficiency, and performance are as advertised and publicized.
- Representing in their advertising emissions and environmental characteristics for the Class Vehicles that are false.

133.    Plaintiffs and the Classes have suffered harm as a result of these misrepresentations, concealments, and violations.

134.   Fiat Chrysler's public statements, misrepresentations, and omissions regarding the Class Vehicles' environmentally friendly properties, including their emissions, environmental standards, fuel efficiency, and performance in their advertising, were substantial and material factors in inducing Plaintiff and the Classes to purchase their Class Vehicles. Plaintiffs and the Classes suffered injury in fact and lost money and/or property as a result of Fiat Chrysler's unlawful business acts and practices, and the Classes have suffered harm when each was required to pay a purchase price for their Class Vehicle in excess of what a Class member would have paid if Fiat Chrysler had accurately disclosed the Class Vehicles' characteristics and in the form of decreased resale value of the Vehicles.

135.   Accurate information about the environmental properties of its vehicles, their environmental friendliness, emissions, fuel efficiency and performance were concealed from Plaintiffs and the Classes.

136.   Said representations were made by Fiat Chrysler when Fiat Chrysler either knew that the representations were false, or made the representations recklessly and without regard for their truth.

137.   Fiat Chrysler had a duty and violated said duty to disclose the true characteristics of the Class Vehicles due to their superior knowledge as well as due to their affirmative misrepresentations regarding the environmental friendliness of the vehicles.

138.   Fiat Chrysler's conduct was intended to induce Plaintiffs and the Classes to rely on their representations. Fiat Chrysler intended to induce Plaintiffs and the Classes to: (a) purchase Class Vehicles; and (b) to purchase Class Vehicles at a higher purchase price, than they would have absent Fiat Chrysler's misrepresentations and concealment.

139.   Reliance by Plaintiffs and the Classes was reasonable based upon Fiat Chrysler's representations regarding the characteristics of the Class Vehicles. And Plaintiffs and the Classes' reasonable reliance upon Fiat Chrysler's representations was a substantial factor in causing their harm.

140.   As a direct and legal result of Fiat Chrysler's fraud, Plaintiffs and the Classes have sustained damages in an amount to be determined at trial.

141.   The aforementioned acts of Defendants, and each of them, were done maliciously, oppressively, and fraudulently, and Plaintiffs and the Classes are entitled to punitive and exemplary damages in an amount be shown according to proof at trial.

**SIXTH CAUSE OF ACTION**
**Breach of Implied Warranty**
**(By Illinois and Pennsylvania Classes Against Fiat Chrysler Defendants)**

142.   Plaintiffs re-allege and incorporate by reference each of the paragraphs set forth above as though fully set forth herein.  Plaintiffs bring this claim individually and on behalf of the Illinois and Pennsylvania Classes against Fiat Chrysler.

143.   Fiat Chrysler impliedly warranted to persons purchasing the Class Vehicles that these vehicles were what they were represented to be.

144.   Fiat Chrysler's implied warranties induced Plaintiffs and other members of the Classes to purchase the Class Vehicles from Fiat Chrysler. Plaintiffs and the Classes both directly and indirectly believed and relied upon by these implied warranties. And said implied warranties induced them to choose Fiat Chrysler's Class Vehicles. Plaintiffs and the Classes' reliance was justified, and was based on Fiat Chrysler's skill, expertise, and judgment in the design, manufacturing, testing, labeling, distribution, or sale of such products.

145.   Fiat Chrysler had knowledge of the purpose for which its Class Vehicles were purchased at the time of sale, and at the time of sale also impliedly warranted the same to be, in all respects, fit and proper for this purpose.

146.   Said warranties were breached by Fiat Chrysler, in that the Class Vehicles were not fit for the purpose for which they were intended and used; rather Plaintiffs and the Classes were sold vehicles by Fiat Chrysler that were not fit for use as represented. The defect in the Class Vehicles existed prior to the delivery of the products to Plaintiffs and the Classes.

147.   Plaintiffs and the Classes have suffered injury in fact and have suffered an economic loss by, inter alia: (a) leasing or purchasing a product they never would have leased or purchased; (b) leasing and/or purchasing an inferior product whose nature and characteristics render it of a lesser value than represented, (c) incurring costs for diminished resale value of the Class Vehicles purchased, (d) leasing and/or purchasing a product that poses a danger to the

1    health and safety of the public, (e) incurring increased costs to repair the Class Vehicles

2    purchased, and (f) incurring costs for loss of use.  Plaintiffs and the Classes request the Court

3    issue an injunction restraining and enjoining Fiat Chrysler from disseminating false and

4    misleading advertising regarding the environmental qualities of the Class Vehicles.

5                              **SEVENTH CAUSE OF ACTION**
                              **Breach of Express Warranty**
6    **(By Illinois and Pennsylvania Classes Against Fiat Chrysler Defendants)**

7            148.   Plaintiffs incorporate by reference each of the paragraphs set forth above as

8    though fully set forth herein.   Plaintiffs bring this claim individually and on behalf of the

9    Illinois and Pennsylvania Classes against Fiat Chrysler.

10           149.   Fiat Chrysler expressly warranted to persons purchasing the Class Vehicles that

11   they were what they were represented to be.

12           150.   Plaintiffs and members of the Classes, in particular, were induced by these express

13   warranties to use and purchase Fiat Chrysler's products. Plaintiffs and the Classes directly and

14   indirectly believed and relied upon Fiat Chrysler's express warranties, and they induced Plaintiff

15   and the Classes to select the Class Vehicles.

16           151.   The above referenced warranties were breached by Fiat Chrysler as its products

17   were not fit for the use and purpose expressly warranted by Fiat Chrysler.

18           152.   Plaintiffs and the Classes have suffered injury in fact and have suffered an

19   economic loss by, inter alia: (a) leasing or purchasing a product they never would have leased or

20   purchased; (b) leasing and/or purchasing an inferior product whose nature and characteristics

21   render it of a lesser value than represented; (c) incurring costs for diminished resale value of the

22   products purchased; (d) leasing and/or purchasing a product that poses a danger to the health and

23   safety of not only the purchaser but also the public; (e) incurring increased costs to repair the

24   products purchased; and (f) incurring costs from loss of use. Plaintiffs and the Classes therefore

25   request that the Court issue an injunction restraining and enjoining Fiat Chrysler from sending or

26   transmitting false and misleading advertising to individuals or entities concerning the

27   environmental and other qualities of the vehicles from Fiat Chrysler.

28

CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**EIGHTH CAUSE OF ACTION**
**Deceit by Concealment**
**(By Illinois and Pennsylvania Classes Against Fiat Chrysler Defendants)**

153.   Plaintiffs re-allege and incorporate by reference the allegations set forth above. Plaintiffs bring this claim individually and on behalf of the Illinois and Pennsylvania Classes against Fiat Chrysler.

154.   At all times relevant, Fiat Chrysler was and is under a duty to communicate with Plaintiffs and the Classes in good faith and to provide to Plaintiffs and the Classes all material facts within Fiat Chrysler's knowledge.

155.   Fiat Chrysler deceived Plaintiffs and the Classes by concealing from them the true facts concerning the Class Vehicles that Fiat Chrysler was obligated to disclose. As set forth above, Fiat Chrysler knew the representations made about the Class Vehicles' emissions and performance were untrue or misleading, but concealed those facts from Plaintiffs and the Classes.

156.   Fiat Chrysler knew that these omissions were material and that Plaintiffs and the Classes would rely on these omissions to their detriment. Plaintiffs and the Classes did in fact rely on these omissions such that had they known the true facts, they would have acted differently.

157.   As a result of the deceit by concealment by Fiat Chrysler, Plaintiffs and the Classes suffered the injuries and damages set forth above.

**VI.**
**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and the Classes, pray for relief as follows:

A.      An Order appointing Plaintiffs to represent the proposed Classes pursuant to Fed. R. Civ. P. 23(a) and designating their counsel as Class Counsel;

B.       An Order enjoining Fiat Chrysler from future violations of the specified statutes as alleged herein;

C.      An Order awarding Plaintiffs and the Classes restitution and/or disgorgement;

D.      An Order awarding Plaintiffs and the Classes compensatory damages;

CLASS ACTION COMPLAINT

1        E.      An Order awarding Plaintiffs and the Classes punitive damages;

2        F.      An Order awarding Plaintiffs and the Class Members pre-judgment and post-

3  judgment interest, and order that such interest be awarded at the highest legal rate from and after

4  the date of service of the initial complaint in this action;

5        G.      An Order awarding Plaintiffs and Class Members their costs of this suit, including

6  reasonable attorneys' fees as provided by law; and

7        H.      Such other or further relief as may be just and proper.

8

9  **VII.**
**JURY TRIAL DEMAND**

10        Plaintiffs and all those similarly situated hereby demand a trial by jury for all issues so

11  triable.

12  Dated:  January 26, 2017      By:    _/s/ Francis O. Scarpulla_____

13        Francis O. Scarpulla (CASB No. 41059)
Patrick B. Clayton (CASB No. 240191)

14  LAW OFFICES OF FRANCIS O. SCARPULLA
456 Montgomery Street, 17th Floor

15  San Francisco, CA 94104
Telephone:    (415) 788-7210

16  Facsimile:    (415) 788-0706
fos@scarpullalaw.com

17  pbc@scarpullalaw.com

18  Mark F. Anderson (CASB No. 44787)
ANDERSON, OGILVIE & BREWER

19  1736 Stockton Street, Ground Floor
San Francisco, CA  94133

20  Telephone:    (415) 651-1951
Facsimile:    (415) 500-8300

21  mark@aoblawyers.com

22  Christina Gill Roseman
ROSEMAN LAW FIRM

23  8878 Covenant Avenue, No. 315
Pittsburgh, PA  15237

24  Telephone:    (800) 745-5259
Facsimile:    (888) 588-1983

25  croseman@helpforlemoncars.com

26  ///

27  ///

28

CLASS ACTION COMPLAINT

1

2    Scott R. Kaufman (CASB No. 190129)
     KAUFMAN LAW OFFICES
     140 Third Street
3    Los Altos, CA  94022
     Telephone:      (408) 727-8882
     Facsimile:      (408) 272-8883
4    LemonAtty@gmail.com

5    *Counsel for Plaintiffs Christopher Walker,*
     *Betty Lou Rugg, and the Proposed Classes*

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT